UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

## Case Number: 14-21133-CIV-MORENO

REINALDO SEGUNDO LEON, and all
similarly-situated individuals,

      Plaintiff,

vs.

TAPAS & TINTOS, INC. and NICOLAS D.
JUSTO, individually,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Plaintiff Reinaldo Segundo Leon brings this action against Defendants Tapas & Tintos, Inc.,

a restaurant and bar located in Miami Beach, and against Nicolas Justo, director and owner of the

restaurant. Plaintiff alleges he was employed by the Defendants between March 2006 and November

2011, and that his duties included food preparation, cooking, dishwashing, cleaning, and

janitorial work.  In his First Amended Complaint, Plaintiff alleges Defendants failed to pay

overtime in violation of the Fair Labor Standards Act (Counts I and II), improperly retaliated against

Plaintiff in violation of Fla. Stat. § 440.205 (Count III), misclassified Plaintiff in paying him as an

independent contractor rather than a general employee in violation of the Florida Deceptive and

Unfair Trade Practices Act (Count IV), and issued fraudulent tax returns based on this

misclassification in violation of 26 U.S.C. § 7434 (Count V).

Defendants have moved to dismiss Plaintiff's complaint, or alternatively for a more definite

statement, arguing Plaintiff's complaint is devoid of facts supporting Plaintiff's conclusory

recitations of the elements for each cause of action, is vague and ambiguous, and that Plaintiff has

otherwise failed to state claims for relief under the relevant statutes.

For the reasons provided below, the Court grants in part and denies in part the Motion to Dismiss. Plaintiff is granted leave to amend the complaint in accordance with this Order, and must do so by no later than **October 29, 2014**. Plaintiff must also file his written notice consenting to become a party member by no later than **October 29, 2014**. Defendants must file **both** a motion to dismiss, should it choose to do so, and an answer to the amended pleading by no later than **November 20, 2014**.

## Legal Standard

When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 129 S. Ct. at 1950.

## I. Plaintiff has Stated a Claim for Relief under the Fair Labor Standards Act.

In Counts I and II, Plaintiff alleges failure to pay overtime against each Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Plaintiff alleges Defendant is and was engaged in interstate commerce as defined under the Act where: (1) Defendant has more than two employees engaged in commerce or in the production of goods for commerce and who sold, handled, and worked on goods and materials previously moved through interstate commerce, as well as

initiating credit card transactions, and (2) the annual gross revenue of Defendants was in excess of $500,000 per annum. Plaintiff concludes that for these reasons, there is enterprise coverage under the Act. Plaintiff further alleges that because he regularly handled and worked on goods and materials that were moved across State lines, there is individual coverage.

Defendants argue that Plaintiff has failed to allege any facts to support these conclusory assertions of enterprise and individual coverage, and that "a mere recitation of the elements is insufficient to state a claim." Defendants point to two district court cases, wherein the court dismissed similar claims for those reasons. *See Schainberg v. Urological Consultants of South Florida, P.A.*, 2012 WL 3062292 (S.D. Fla. July 26, 2012); *Rushton v. Eye Consultants of Bonita Springs*, 2011 WL 2601245 (M.D. Fla. June 30, 2011). In *Schainberg*, the Court found that Plaintiff "has merely repeated the statutory language verbatim, adding nothing else in the way of factual matter," thus "find[ing] the allegations to be conclusory." 2012 WL 3062292 at *3. In *Rushton*, the Court found that Plaintiff "has failed to allege any facts to support these conclusory statements," and that "[a] mere recitation of the elements is insufficient to state a claim." 2011 WL 2601245 at *2.

To establish a prima facie case for failure to pay overtime compensation and/or minimum wages under FLSA, an employee must demonstrate: "(1) an employment relationship, (2) that the employer engaged in interstate commerce, and (3) that the employee worked over forty hours per week but was not paid overtime wages." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n. 68 (11th Cir. 2008). With respect to the third element, Plaintiff has sufficiently alleged that he worked over forty hours per week but was not paid overtime. With respect to the first element, Plaintiff has sufficiently demonstrated an employment relationship between himself and each Defendant. Under 29 U.S.C. § 203, "employee" is defined as "any individual employed by an

employer," and "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." As to Defendant Justo, Plaintiff alleges Mr. Justo is the director and owner of Tapas & Tintos. Plaintiff further alleges that Defendant Justo, along with Tapas & Tintos, "had absolute control over Plaintiff's hours of work," that "[t]he work performed by Plaintiff was an integral part of the Defendants' business," and that "Plaintiff performed his work entirely at the Defendants' facilities and used Defendants' equipment and supplies." This is sufficient to establish Defendants as "employers" under FLSA. *See, e.g., Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1160 (11th Cir. 2008) (finding that an individual who is involved in the "day-to-day operation" of a company or who has "some direct responsibility for the supervision of an employee" may be considered an "employer" under the statute).

With respect to the second element, "[u]nder the FLSA, an employer is required to pay overtime compensation if the employee can establish enterprise coverage or individual coverage." *Thorne v. All Restoration Services, Inc.,* 448 F.3d 1264, 1265-66 (11th Cir.2006). For "individual coverage" to apply under the FLSA, an employee must have been (1) engaged in commerce or (2) engaged in the production of goods for commerce. 29 U.S.C. § 207(a) (stating "no employer shall employ any of his employees who ... is engaged in commerce or in the production of goods for commerce ... for a workweek longer than forty hours unless such employee received compensation ... at a rate no less than one and one-half times the regular rate").

For individual coverage, "[a]n employee is engaged in commerce if he is engaged in activities that constitute interstate commerce, not merely affect it." *Thompson v. Robinson, Inc.,* 2007 WL 2714091, at *3 (M.D. Fla. Sept. 17, 2007) (citing *Thorne,* 448 F.3d at 1266). "An employee must 'directly participat[e] in the actual movement of persons or things in interstate commerce by (i)

-4-

working for an instrumentality of interstate commerce, ... or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel.'" *Id.* "Goods cease to move in interstate commerce once they reach the customer for whom they are intended." *Id.* (citing *Thorne*, 448 F.3d at 1267). Thus, an employer who "purchases goods that previously moved in interstate commerce for intrastate use" or an employee who "engage[s] in any further intrastate movement of the goods [is] not covered under the Act." *Id.*

In this case, Plaintiff's duties included food preparation, cooking, dishwashing, cleaning, and janitorial work. Plaintiff alleges that he was individually engaged in commerce because he regularly handled and worked on goods and materials that were moved across state lines. However, it appears that Defendant Tapas & Tintos, a restaurant, prepares food to be served in the local restaurant; Plaintiff does not allege that the food later returned to interstate commerce. The mere fact that the food may have passed in interstate commerce prior to arriving at the restaurant does not mean that the Plaintiff was engaged in commerce for individual coverage. *Thompson*, 2007 WL 2714091, at *3; *see also Martin v. Briceno*, 2014 WL 2587484 (S.D. Fla. June 10, 2014); *Lopez v. Top Chef Inv., Inc.*, 2007 WL 424764 (S.D. Fla. Nov. 30, 2007). With respect to dishwashing, cleaning, and janitorial work, Plaintiff similarly has not alleged that any "goods and materials," whatever those may be, were later returned to interstate commerce. Plaintiff, therefore, has not established individual coverage.

However, the employees are still covered under FLSA if the employer is covered as an enterprise. For "enterprise coverage" to apply, the enterprise must have (1) employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or

otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) annual gross volume of sales made or business done is not less than $500,000. 29 U.S.C. § 203(s). For enterprise coverage, "the goods must have moved in commerce at some time; they do not have to be currently moving in commerce." *Thompson*, 2007 WL 2714091, at *3. Moreover, Congress's addition in 1974 of the words "or materials" to the statute expanded the number of employers subject to the Act. *E.g., Polycarpe v. E&S Landscaping Service, Inc.,* 616 F.3d 1217, 1224 (11th Cir. 2010) (interpreting "materials" as "tools or other articles necessary for doing or making something" for commercial purposes).

The Court finds it reasonable to infer that, first, goods or materials used in Tapas & Tintos moved in interstate commerce before they were delivered to the restaurant, or second, that the goods or materials handled by Plaintiff in his various duties - food preparation, cooking, dishwashing, cleaning, and janitorial work - were "necessary for doing or making something" for the restaurant's commercial purposes. For these reasons, Plaintiff has sufficiently alleged enterprise coverage at the motion to dismiss stage. See *Lopez,* 2007 WL 424764 at *2 (finding enterprise coverage satisfied); *Diaz v. Jaguar Restaurant Group*, LLC, 649 F.Supp.2d 1343, 1346-48 (S.D. Fla. 2009) (finding restaurant employees handled materials in commerce and were therefore subject to FLSA).

Accordingly, Defendants' Motion to Dismiss as to Counts I and II is denied.

## II.     Defendants' Motion to Dismiss as to Count III (Retaliatory Discharge) is Granted Without Prejudice.

Defendant argues that Plaintiff has failed to state a claim for retaliatory discharge under Section 440.205, Florida Statutes. Under the statute, "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Worker's Compensation Law." Fla. Stat.

§ 440.205.  To state a prima facie case for retaliatory discharge under Fla. Stat. § 440.205, Plaintiff must show that he (1) engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the Plaintiff's protected activities. *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir.1997); *see also Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950–951 (11th Cir.2000) (affirming application of Title VII retaliation analysis to retaliatory discharge claim under Florida state statute).

Plaintiff concedes he only filed a "Petition for Worker's Compensation Benefits" on or around July 13, 2013, roughly twenty months after his employment ended with Defendants.  This activity is clearly protected under the statute, but for obvious reasons fails to satisfy the causal relation where the adverse action occurred well before the protected activity.

Rather, Plaintiff seems to allege that his "protected activity" relates to his requests to Defendants to pay for outstanding medical bills stemming from an injury sustained during his employment on November 5, 2011.  He alleges he put Plaintiff on notice of this injury immediately, and that he was terminated on November 21, 2011- the adverse employment action - because of the repeated requests. In essence, Plaintiff argues that "notifying Defendant of his accident" through oral requests for payment of medical bills constitutes a "valid claim for compensation or attempt to claim compensation under the Worker's Compensation Law."

Plaintiff has failed to plead sufficient facts to support the conclusory assertion that when he "notified Defendant of his accident, he was asserting a valid claim for workers' compensation." Amend. Compl. at ¶ 61.[1]  For these reasons, the Court grants the Motion to Dismiss as to Count III

---

[1] Courts throughout Florida and in this district have consistently interpreted the statute to protect employees against retaliation for filing or "pursuing" workers' compensation claims. *E.g., Smith v. Piezo Technology and Professional Adm'rs*, 427 So. 2d 182, 184 (Fla. 1983) ("[O]ur legislature has proscribed

without prejudice.  Plaintiff is granted leave to amend to allege facts supporting his assertion that he asserted a valid claim for workers' compensation when he simply notified Defendant of the accident.  For example, Plaintiff can allege facts to demonstrate that as a threshold matter he is entitled to medical benefits under the relevant statute.

**III.   Defendants' Motion to Dismiss as to Count IV (Violation of FDUTPA) is Granted with Prejudice.**

In Count IV, Plaintiff alleges Defendants misclassified him as an "independent contractor," when he was in fact an hourly employee, in violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).  As a result, in addition to not receiving payment of overtime hours due to the alleged misclassification, Plaintiff was unable to file proper income tax returns and lost the benefits of withheld taxes. Defendants allege Plaintiff lacks standing under FDUTPA because he must be a consumer under the statute.

The express purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2); see also 501.202(3) (further defining purpose as "mak[ing] state *consumer* protection and enforcement consistent with established policies of federal law relating to *consumer* protection.") (emphasis added).  Section 501.211(2) provides that, "[i]n any action brought by a *person* who has suffered a loss as a result of a violation fo this part, such *person* may recover actual damages[.]" (emphasis added).  In 2001, the term "person" replaced the former term, "consumer,"

a wrongful discharge because of an employee's pursuit of a workers' compensation claim.").  Plaintiff has failed to cite to a case supporting the notion that simply "notifying Defendant of his accident" constitutes a valid workers' compensation claim.

and courts have not been clear as to whether this amendment expanded the statute to non-consumers.

The Court looks to the legislative history and recent district court decisions to find that the term "person," while broadening the scope of FDUTPA, still applies only to consumers. In *Carroll v. Lowes Home Centers, Inc.*, 2014 WL 1928669 (S.D. Fla. May 6, 2014), the district court found that "the legislative history of the 2001 amendment indicates the Florida Legislature did not intend to expand the FDUTPA to non-consumers." *Id.* at *3. Rather, "the purpose of the amendment was to clarify that remedies available to individuals under the FDUTPA are also available to businesses." In coming to this conclusion, the district court cited to the House of Representatives Committee on Agriculture & Consumer Affairs Analysis, HB 685, March 12, 2001, page 4, wherein the committee "reasoned that the term "person" is understood to include businesses, so changing 'consumer' to 'person' would clarify that remedies available to individuals are also available to businesses." *Id.* (citing Senate Staff Analysis and Economic Impact Statement, CS/SB 208, March 22, 2001, page 6). The district court then cited to numerous other district court cases similarly finding.[2] Indeed, this very Court has come to that conclusion. *See Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*, 2013 WL 1786356, at *1-2 (S.D. Fla. April 25, 2013) ("Although FDUTPA may extend to protect business entities by such violative practices, 'it has no application to entities complaining of tortious conduct which is not the result of a consumer transaction.'") (citation omitted).

_____

[2] *See, e.g., Innovative Strategic Commc'ns, LLC v. Viropharma, Inc.*, 2012 WL 3156587 (M.D. Fla. Aug.3, 2012) (section 501.211(2), as amended, applies only to consumers); *Kertesz v. Net Transactions, Ltd.*, 635 F.Supp.2d 1339, 1359 (S.D. Fla.2009) (same); *Dobbins v. Scriptfleet, Inc.*, 2012 WL 601145 (M.D. Fla. Feb. 23, 2012) (independent contractor alleging misclassification does not have standing under § 501.211(2)); *cf. Beacon Prop. Mgmt., Inc. v. PNR, Inc.*, 890 So.2d 274, 278 (Fla. 4th DCA 2004) (noting, "[a]t least two state court decisions-rare events in FDUTPA litigation-have held that business entities may not use FDUTPA for damages actions unless they involve transactions in which the business entity was itself acting as a consumer," but not reaching the issue).

A "consumer" is one who has engaged in the purchase of goods or services. *See N.G.L.*

*Travel Associates v. Celebrity Cruises, Inc.*, 764 So.2d 672, 674 (Fla. 3d DCA 2000); *National*

*Alcoholism Programs/Cooper City, Fla., Inc. v. Palm Springs Hosp. Employee Benefit Plan*, 825

F.Supp. 299, 302–03 (S.D. Fla. 1993). Based on the allegations in the Amended Complaint, Plaintiff

cannot be said to be a "consumer," as he has not, nor has he alleged to have, engaged in any

consumer transaction.   Accordingly, Plaintiff does not have standing to bring a claim against

Defendants for violation of FDUTPA. This claim is dismissed with prejudice.[3]

**IV.   Defendants' Motion to Dismiss as to Count V (Violation of 26 U.S.C. § 7434(a)) is Granted With Prejudice as to Defendant Justo, and Granted Without Prejudice as to Defendant Tapas & Tintos.**

In Count V, Plaintiff alleges Defendants wilfully filed a fraudulent information return due

to Defendants' intentional misclassification of Plaintiff as an independent contractor rather than as

an employee, in violation of 26 U.S.C. § 7434(a).  As a result, Plaintiff alleges Defendants are

"strictly liable" to Plaintiff in an amount equal to the greater of $5,000.00, or the sum of actual

damages to Plaintiff, costs and reasonable attorneys' fees.  Defendants allege that where neither

Tapas & Tintos or Mr. Justo can be considered a "filer" of the purported fraudulent return, and where

the tax consequence associated with the filing of 1099-MISC forms "run directly with the individual

reporting the income on his personal taxes and not the entity issuing the form," Plaintiff's claim must

be dismissed.

---

[3] Moreover, as to Defendant Justo, a showing of fraud is ordinarily required in order to hold an individual responsible for the acts of a corporation. *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984) (explaining that an individual may not be held liable for the actions of a corporation "unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them."). Plaintiff brings a claim under FDUTPA against Mr. Justo, but has failed to provide any factual support to allow the Court to draw the reasonable inference that Mr. Justo, as an officer of Tapas & Tintos, should be individually liable for the actions of the corporation.

26 U.S.C. § 7434 provides, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." To establish a claim of tax fraud under 26 U.S.C. § 7434, Plaintiff must prove: (1) Defendants issued an information return; (2) The information return was fraudulent; and (3) Defendants willfully issued a fraudulent information return. *Seijo v. Casa Salsa, Inc.*, 2013 WL 6184969, at *7 (S.D. Fla. Nov. 25, 2013).

With respect to the first element, the parties concede that the 1099 forms are information returns. With respect to the second element, the Court finds that for the purposes of 26 U.S.C. § 7434, Plaintiff has sufficiently alleged that Defendant Tapas & Tintos issued Form 1099-MISC's for the payments it made to Plaintiff, and that the issued forms violated Section 7434 where Plaintiff could properly be classified as an employee rather than an independent contractor. However, Plaintiff provides no factual support that Defendant Justo was a filer of the alleged fraudulent return form, let alone a knowing filer of a fraudulent form. Indeed, Plaintiff attaches certain 1099-MISC forms to the Amended Complaint, under which Defendant Tapas & Tintos is listed as the "payer."

With respect to the third element, Plaintiff has failed to allege sufficient facts to conclude that either Defendant *willfully* or *fraudulently* issued false returns. While case law in Florida discussing the pleading standard for filing fraudulent tax returns under Section 7434 is sparse, circuit courts around the country have found that "willfulness" in the context of the statute "connotes a voluntary, intentional violation of a legal duty," and that tax fraud typically requires "intentional wrongdoing." *Vandenheede v. Vecchio*, 541 Fed. Appx. 577, 580 (6th Cir. 2013) (citing *Maciel v. Comm'r*, 489 F.3d 1018, 1026 (9th Cir. 2007); *Granado v. Comm'r*, 792 F.2d 91, 93 (7th Cir. 1986)). Therefore, at the motion to dismiss stage, "the complaint must contain specific allegations supporting a

-11-

plausible inference that [Defendants] willfully filed false information returns."

While Plaintiff has provided facts to show he may be an "employee" under FLSA entitled to the issuance of W-2 forms, he has failed to include specific facts supporting an inference of scienter, i.e. that Defendants willfully filed fraudulent information returns. Bare assertions that Defendants "knew" the returns to be false, or that Plaintiff requested that Defendants pay him as an employee - without specific facts as to the who, what, when, why or how surrounding the actual filing of returns - does not meet the standard for pleading tax fraud. *Cf. Angelopoulos v. Keystone Orthopedic Specialists, S.C.,* 2014 WL 292578 (N.D. Ill. Jan. 23, 2014) (denying motion to dismiss where Plaintiff advanced substantial allegations detailing the willful filing of fraudulent returns; "In his thirty-eight page complaint and in the thirty six pages of attachments (which the Court treats as part of the complaint), Angelopoulos lays out in great detail the exact amounts that he alleges are fraudulent, the way in which he believes that Hall derived these false figures, the date on which Hall and Dubin submitted the fraudulent filing to the IRS, and the motives that Defendants had in submitting them."). For example, Plaintiff attaches certain 1099-MISC forms to his complaint, but fails to allege details regarding how such returns are false or fraudulent other than the purported misclassification, or details regarding any knowing and willful filing by either Defendant.

Accordingly, Count V is dismissed without prejudice as to Defendant Tapas & Tintos. Plaintiff is granted leave to amend to add specific allegations supporting Tapas & Tintos' willfull and knowing issuance of fraudulent information returns. With respect to Defendant Justo, Count V is dismissed with prejudice as Plaintiff has failed to set forth a single allegation as to why Mr. Justo should be held liable.

## Conclusion

For the reasons provided above, it is **ADJUDGED** that:

-12-

(1) Defendant's Motion to Dismiss as to Count I (Violation of FLSA against Tapas & Tintos) and Count II (Violation of FLSA against Nicolas Justo) is DENIED.

(2) Defendant's Motion to Dismiss as to Count III (Retaliatory Discharge against Tapas & Tintos) is GRANTED WITHOUT PREJUDICE.

(3) Defendant's Motion to Dismiss as to Count IV (Violation of FDUTPA against Tapas & Tintos and Nicolas Justo) is GRANTED WITH PREJUDICE.

(4) Defendant's Motion to Dismiss as to Count V (Violation of 26 U.S.C. § 7434) is GRANTED WITH PREJUDICE as to Nicolas Justo and GRANTED WITHOUT PREJUDICE as to Tapas & Tintos.

Plaintiff is granted leave to amend the complaint in accordance with this Order, and must do so by no later than **October 29, 2014**.  Plaintiff must also file his written notice consenting to become a party member by no later than **October 29, 2014**. Defendants must file **both** a motion to dismiss, should it choose to do so, and an answer to the amended pleading by no later than **November 20, 2014**.

DONE AND ORDERED in Chambers at Miami, Florida, this 7 day of October, 2014.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record

-13-